CHARLES STARKER AND JOHN T. REMEY, Trustee, Appellants, v. THE MCCOSH IRON AND STEEL COMPANY, *et al.*

**"In the Usual Course of Trade" Defined.** A mortgage permitted
mortgagor to sell in the usual course of trade. Defendant had
made kegs for mortgagor for years. About the time of mort-
gagor's failure it was indebted to defendant M. for such kegs which
were needed to carry on the business of mortgagor. Defendant
was told that he could not have money and agreed to take his pay
in mortgaged goods. He took goods needed in his business to an
amount somewhat exceeding his debt, but not disproportionate to
his business. The sale to him was made while mortgagor was
still doing business under said permission in the mortgage.
While defendant had never made such a purchase of the mort-
gagor, he had of others. *Held*, the sale is valid.

**Practice.** Where the agent of a railroad delivers goods in violation of
shipping instructions, such an express trust is created as enables
the railroad, in its own name, to recover the proceeds of the goods
in the hands of the receiver of him to whom the wrongful delivery
was made.

*Appeal from Des Moines District Court.*—HON. J. M.
CASEY, Judge.

SATURDAY, APRIL 6, 1895.

The defendants, other than the company named
above, are the Burlington, Cedar Rapids & Northern
Railroad Company, Adam Moehn, and C. W. Rand,
receiver. The plaintiff trustees are the holders of cer-
tain bonds issued by the McCosh Iron & Steel Company
for two hundred and twenty-five thousand dollars,
which bonds the company secured by mortgage on its
plant, including the following personal property: "All
the machines, machinery, tools, fixtures, boilers,
engines, furniture, shelving; all iron, of any and every
kind and· description; all manufactured articles and
material, plain wire, barbed wire, wire rods, nails; all

tanks, buildings, and other erections; and all horses
and wagons and harness owned and used by said
McCosh Iron & Steel Co.,—all the above-described prop-
erty being upon and about the premises above
described, and in the possession of said McCosh Iron
& Steel Co.; also all bills receivable, notes, accounts
receivable, books of account and the accounts therein,
all the property of said company." The following are
stipulations of the mortgage: "It is also stipulated
that this conveyance shall attach to, and cover and
include, any and all additions made hereafter to said
property and plant, whether the same be by way of
material, machinery, tools, fixtures, and manufactured
articles, whether the same be actually on hand or in
transit, and including real estate, together with build-
ings, machinery, and all other additions and improve-
ments that may be made thereon; also accounts, bills,
etc.   And it is expressly stipulated that the express
mention of specific articles is not to be taken to exclude
any other property or articles not mentioned, but the
same is intended to include, and does include, all prop-
erty belonging to said company, and all it may here-
after acquire or hold, wherever situated." Because of
a failure to pay the interest on the bonds as it became
due, under a provision of the mortgage, the entire
mortgage debt became due, and this action is to fore-
close the mortgage therefor.   On the day of the filing
of the original petition, was also filed an application for
the appointment of a receiver, pending which applica-
tion a supplemental petition was filed, making Adam
Moehn and the defendant railroad company parties
defendant.   As to the railroad company, it is alleged
that it has removed, or is about to remove, from the
plant a large quantity of iron rods which are included
in the plaintiff's mortgage, and an injunction was
asked and obtained to prevent such removal.   As to

the defendant Moehn, it is claimed that he has caused to be removed from the plant large quantities of nails, iron, and other goods, and has the same in his possession; and the plaintiffs say, on information, that such property was taken by him on some indebtedness for which no lien existed in his favor prior to that of plaintiff's lien. The prayer of the petition is that all the property be preserved to the plaintiffs, and applied to the discharge of their claim under the mortgage. The defendants Moehn and the railway company each answered, presenting issues, and their respective claims will be noticed in their proper connection in the consideration of the case. The McCosh Iron & Steel Company made no defense, and, as to it, the district court gave judgment for plaintiff, and for defendants Moehn and the railroad company, and, as to them, the plaintiff appeals.—*Affirmed.*

*P. Henry Smyth* and *Powers & Huston* for appellants.

*S. K. Tracy, Kelly & Cooper, J. T. Illick,* and *C. L. Poor* for appellees.

Granger, J.—I.  The facts as to the defendant railroad company are, in substance, that it received several car loads of iron rods consigned by Naylor & Co. to itself at Burlington, Iowa, where was located the plant of the McCosh Iron & Steel Company, to be delivered to such company on payment of drafts therefor drawn by Naylor & Co. to its own order, which drafts were attached to the bills of lading, and sent to the National State Bank, at Burlington, of which bank the plaintiff Remey is the president.  One Kendall is the general agent of the railway company, and upon the representation of McCosh, who was an agent of the iron and steel company, that the company was in need of the

iron, and that he would furnish the necessary papers, he (Kendall) delivered the rods to the company. The rods had not been paid for, and the delivery was without authority. It was after this delivery that the railway company attempted to take possession of the rods, and were stopped by the injunction. The rods were then sold, with other iron, by the trustees, and the amount realized was one thousand nine hundred and eighty-six dollars and ninety-three cents, of which amount one thousand eight hundred and ninety-three dollars and ninety-three cents was for the rods in question; and the district court, finding the issues with the railroad company, entered judgment for it for that amount, and ordered the receiver to pay it.

It is said by appellants that the railroad company cannot recover because not the real party in interest. The answer recited the facts, and an amendment to it presents a prayer for "judgment for the return of the property, or that it have judgment for its value," etc. That the answer sought such relief as was granted is clearly manifest on the face of it. The parties proceeded to a trial of the issues, and testimony was elicited with a view to such a judgment, if the facts were established. The plaintiffs had, after the issuance of the injunction, sold the goods, and only the money was in their hands as the subject of contention. As between the railroad company and the consignor, the company had wrongfully disposed of property intrusted to it for specified purposes; that is, for transportation and delivery under specified conditions. The property, persons, and purposes of the trust were expressly pointed out and understood. Such conditions make an express trust. Perry, Trusts, section 24. The railroad company, as a trustee of an express trust, could bring the action in its own name. Code, section 2544. As such a trustee, it had the right to protect itself and the rights

of the company for whom the trust was exercised. There is a claim that because the pleading was in the form of an answer, and not a cross bill, such a recovery cannot be had. The affirmative relief sought is in the nature of a counterclaim, and is to be pleaded in an answer. Subdivision 6, section 2655, is as follows: "The defendant may set forth in his answer as many causes of defense, counterclaim, whether legal or equitable, as he may have." There is no provision requiring that such pleading shall be designated as a cross bill or counterclaim. While nicety or accuracy in pleading might require that matter of counterclaim should be, in words, designated as such, it is not absolutely required; and where the intent can be known from the facts pleaded, the pleading will be held sufficient, and especially so where the pleading is not questioned on the trial.

II. It is urged that the judgment of the court is not sustained by the evidence. Considerable space is devoted, in argument, to the identity of the rods in question. When these rods were delivered to the McCosh Iron & Steel Company, they were mingled, to some extent, with other rods, so that the question of identity is somewhat in doubt. But in view of the fact that the rods have since been sold to the plaintiffs, so that only the question of their value remains, much of the importance of the evidence that might have attached if the specific property was sought to be recovered is lost. The doubtful question, under the evidence, is the amount of iron or rods delivered, the value of which the railroad company may recover. No view of the evidence leads to a satisfactory conclusion on this question. The testimony of those best calculated to know warrants the conclusion arrived at by the court below, with which we are content.

III.    The case, as to defendant Moehn, is upon sub-
stantially this state of facts:    Moehn was a cooper, and
manufactured nail kegs for the McCosh Iron & Steel Com-
pany, and had been doing business with the firm
for some ten years.    About October 29, 1891,
when the iron company failed, it was indebted
to Moehn in the sum of about six hundred and thirty-
five dollars.    On that day Moehn purchased of the iron
company fifty-six bundles of hoop iron and one hundred
and seventy-eight kegs of wire nails, all of the value of
seven hundred and eighty-one dollars and fifty-six cents.
The purchase exceeded the indebtedness to Moehn in the
sum of about one hundred and forty-four dollars.    It is
appellant's contention that this sale was not in the
usual course of business, and hence void as to them.    A
stipulation in the mortgage permitted the iron company
to carry on its business, and sell in the usual course of
trade.    It is very likely true that this purchase by
Moehn was, to some extent, at least, induced by the fact
that the iron company was indebted to him, and he was
unable to get his pay in money.    The purchase was
made on Monday.    On Saturday before, Moehn was
there to collect the money on his account, but could not
get it, and was told to come Monday, which he did; and
he was then told that he could not get any money, but
that he could have merchandise.    He said:  "What am
I to do?    I need cash."    He was answered that they
could give him nails and hoop iron.    It appears that
these were articles that he needed in his business, which
was quite extensive.    He had then on hand, undelivered,
kegs manufactured for the iron company to the number
of two thousand or more.    It appears that the indebted-
ness to Moehn was largely for September business.
Moehn had never made such a purchase of the iron com-
pany before, but he had made such purchases elsewhere,
in the regular course of his business.    Our conclusion

is, from the evidence, that, as to Moehn, he made this purchase of the iron company because the company could not meet its engagement with him to pay money which he needed for such purposes, and that the transaction was in good faith. His purchase in excess of his claim is somewhat indicative of his intention, and that it was not simply to collect his debt, in anticipation of the failure of the iron company. There is some claim that because of the absence of the president of the company, and other indications, the purchase was made only because of a prospective failure. The purchase was made while the company was still doing business under authority from the plaintiffs. Moehn had been aiding the carrying on of the business by extending a credit for kegs needed for that purpose; and we do not see why, when money was refused and merchandise offered in payment, needed by him in his business, he should not take it, nor do we see why it was out of the usual course of trade. It seems to us that the judgment of the district court is legal and equitable, and it is *affirmed*.