C. J. CRAWFORD v. FORT DODGE PLASTER Co. and EMIL
DURR, President, Appellees, and R. W. CRAWFORD,
Secretary, and CLARA A. CRAWFORD, Intervener, Ap-
pellants.

**Corporate stock:** OWNERSHIP: EVIDENCE. In an action to recover cer-
1  tain corporate stock, the evidence is held to support a finding that
the same was the property of plaintiff.

**Conversion of corporate stock:** DECREE: WHO MAY OBJECT THERE-
2  TO. In an action to recover corporate stock, plaintiff alleged con-
version and asked judgment for its value. Plaintiff's father
answered claiming that the stock belonged to his wife, and filed a
cross petition to recover a dividend thereon, and asked that the
same be decreed to belong to his wife, who also intervened and
pleaded the same relief. The corporation and its president, who
were parties defendant, answered, denying that the stock had been
fraudulently issued and asked that the rival parties litigate their
claims and that if it be adjudged that the shares belonged to the
plaintiff the certificates produced in court by the wife be cancelled
and other certificates issued to the rightful owner. Plaintiff an-
swered the cross petition, admitting the good faith of the issuance
of the stock and pleaded " as in the petition." Held, that plaintiff not
having appealed from a decree directing a cancellation of the stock
in the hands of the intervener and the issuance of new stock, the
other parties against whom no judgment was entered had no stand-
ing to object that the decree should have been for the value of the
stock.

*Appeal from Webster District Court.*— HON. J. R. WHIT-
AKER, Judge.

TUESDAY, NOVEMBER 22, 1904.

CONTROVERSY over the ownership of certain shares of
stock in the Ft. Dodge Plaster Company. The court de-
creed that twenty-seven shares in the hands of the intervener
be canceled, and others in their stead be issued to the plain-
tiff. The defendant R. W. Crawford and his wife, the in-
tervener, appeal.—*Affirmed.*

*Wright & Nugent* and *Kenyon & O'Connor,* for appellants.

*Healy Bros. & Kelleher,* for C. J. Crawford.

*A. N. Botsford,* for other appellees.

LADD, J.— In the early part of January, 1899, the plaintiff and his father, R. W. Crawford, one of the defendants, procured an option on an eighty-acre tract of land near Ft. Dodge, in the name of the former as trustee, with a view of prospecting for gypsum and organizing a company to handle it. A sufficient number of holes were sunk to demonstrate that the surface was underlaid with that material, and on March 7, 1899, the balance of the cash payment of $1,000 was made, and a deed was taken in the name of R. W. Crawford's wife, who executed a note for the unpaid purchase price, $1,000, and secured its payment by a mortgage on the land. There is some controversy concerning the reason the deed was taken in her name instead of C. J. Crawford's, but the record has satisfied us that this was a mere matter of convenience, and that the enterprise, regardless of the source of the money paid on the land, was a joint one of father and son. Thereafter they acted together in promoting a corporation, with capital stock of $34,000, to which this land was conveyed, subject to the mortgage, for $7,000 in stock. Of this, one half, or thirty-five shares, were issued to R. W. Crawford and wife, and the other half to C. J. Crawford. Besides this, C. J. Crawford took thirty shares, for which he paid $3,000. Later, the capital proving insufficient, sixty shares more were issued, of which C. J. Crawford took ten, making seventy-five shares in all held by him. Up to this time there had been no dilution of the stock, save possibly in the price of the land; but in May, 1900, a stock dividend of fifty per cent. was declared. At that time Emil Durr was president and R. W. Crawford secretary of the company. The pro-

1. CORPORATE STOCK: ownership; evidence.

portion of the stock dividend to be issued to C. J. Crawford was thirty-seven shares. A certificate of ten of these was deposited with Durr as collateral security, and certificates for the remaining twenty-seven shares, duly signed by Durr as president, were in the hands of the secretary. In January, 1901, the son was compelled to undergo a surgical operation, from any assistance in which his wife seems to have insisted upon excluding the father. The latter became much incensed, and immediately mailed the certificate of the twenty-seven shares of stock to the president of the company, with the request that it be canceled, and in lieu thereof a like amount of stock be issued to R. W. Crawford's wife. This request was complied with, and the stock certificates delivered accordingly to the interviewer, Clara A. Crawford.

The contention of the defendant R. W. Crawford and the intervener is that the former conducted the negotiations for the land in his own interest, and that he advanced his own money in payment thereof, and that the profits thereon were to be divided with C. J. Crawford only on condition that the latter procured his wife's signature to a deed of certain business property in Ft. Dodge. . Probably owing to financial difficulties, this property had been conveyed by R. W. Crawford to one Aldee in his lifetime, and the latter, since deceased, had devised all his estate to the children of Crawford; being Mary A. Crawford and the plaintiff. On the ground that this real estate in truth belonged to their father, the devisees executed a conveyance at his request to his wife, but the wife of C. J. Crawford persistently refused to join her husband therein. Possibly R. W. Crawford did say to his son that he should have one-half of the profits on the land deal if he procured his wife's signature, and the son may have undertaken to do so. But the son did not agree to waive his interest in these profits, should he fail to obtain the signature, and, as he was entitled to a share in any event, it was not within the power of the father to de-

prive him of the right thereto by arbitrarily imposing the condition mentioned. Nor does the record indicate that such was his original purpose. The division was equitable, and, as we think, in accordance with the understanding of the parties. This view is confirmed by their long acquiescence therein. No objection whatever was raised to the division of the stock as made until the incident related, and we are not inclined to give credit to the claim of R. W. Crawford that it occurred without his knowledge. At the most, procuring the signature was but a part of the consideration, and the remedy if any, available, was not in seizing and attempting to appropriate the son's stock, but in an action for damages. Without undertaking to review the evidence, we are content, as is our custom in such cases, to state merely our conclusions. The record amply sustains the finding that the stock in controversy belonged to the plaintiff.

II. Appellants also insist that the court erred in not rendering judgment for the value of the twenty-seven shares of stock, in accordance with the prayer of the petition, in-

2. CONVERSION OF CORPORATE STOCK: decree: who may object thereto. stead of decreeing that the intervener surrender the certificates for cancellation, and that others be issued to plaintiff in their stead, as prayed in the answer of the defendants Emil Durr and the Ft. Dodge Plaster Company. In order to dispose of this question, a somewhat detailed statement of the issues seems necessary: The petition alleged the conversion of the stock, and asked judgment for its value. The answer and cross-petition of R. W. Crawford, secretary, alleged that his wife, the intervener, owned the land; that she conveyed it to the company in consideration of seventy shares of the stock; that C. J. Crawford, when secretary of the company, fraudulently issued thirty-five of these to himself; that of the stock dividend certificates for seventeen shares were issued on account of these; that defendant first became aware of the diversion of said stock in January, 1901, and thereupon caused the twenty-seven shares in controversy to be issued to his wife,

to whom they, with twenty-six more, being enough to make up the thirty-five shares issued to C. J. Crawford, and the stock dividend thereon, now in plaintiff's name, of right belonged; and he prayed that Clara A. Crawford be made a party; that she be decreed the owner of the twenty-seven shares of the stock, and that plaintiff be ordered to transfer to her the remaining twenty-six shares; and that he pay to the company, for her benefit, all dividends received by him on the thirty-five shares. Clara A. Crawford intervened, and in her petition against plaintiff and defendants repeated the allegations of the above answer and cross-petition, and prayed as therein stated, with this addition: that she have judgment for the dividends paid on the thirty-five shares against C. J. Crawford and the company, and also for the value of any shares of stock which may not be ordered returned to her.

In response to the plaintiff's petition and the petition of intervention, Emil Durr, the president, and the company answered that neither of them had any interest in the controversy over the ownership of the stock; that it was issued to the parties entitled thereto according to the subscription, and the information furnished by the parties; that if either C. J. or R. W. Crawford issued certificates wrongfully, as alleged, it was done to further his own purposes, and was not binding on the company; that in any event the issuance of the thirty-five shares to C. J. Crawford had been ratified by R. W. Crawford and wife; that these defendants had acted throughout in good faith, and were ready to bide the orders of the court; and they prayed that the Crawfords be treated as rival claimants for the stock in controversy, and these defendants be protected against the claims of either, and that it be adjudged to whom the shares belonged, and, if to plaintiff, that the certificates for the twenty-seven shares be produced in court by R. W. and Clara A. Crawford and canceled, and that certificates be issued to the rightful owner, and, if the equities be found in favor of the intervener,

Clara A. Crawford, or R. W. Crawford, then that the stock
be confirmed in the owner; and that these defendants be
relieved from the payment of any costs.

In reply to this answer, the plaintiff admitted the good
faith asserted, and, after mentioning many other matters not
necessary to set out, prayed " as in the petition." In his
answer to the petition of intervention, he asked that it be
dismissed, and that he might have the judgment asked in his
petition; and substantially the same prayer is found in the
reply to the answer and cross-petition of R. W. Crawford,
secretary. It is to be noted that R. W. Crawford did not
claim to own the stock. It was issued to the intervener, and
the evidence was conclusive that it was owned either by her
or the plaintiff. The finding that it was not her property, as
already stated, is sustained by the evidence; and the dismis-
sal of her petition of intervention was not only appropriate
relief against her, but precisely that for which the plaintiff
prayed. The adjudication was that she had no interest in
the twenty-seven shares of stock in her name. This being
true, it was no concern of hers that plaintiff failed to obtain
judgment for their value against some one else. Nor can
we understand why R. W. Crawford should object because
judgment was not entered against him. Ordinarily litigants
are gratified over such a result, and, even though he be ex-
ceptional in this respect, the fact that failure to mulct him
in damages was without actual prejudice will preclude the
correction of the error, if such it was. Possibly the plain-
tiff might have complained, but he had not appealed. Neith-
er has the company and its president appealed; but, even
if they had, they could not be heard to complain, for the
decree is in conformity with the prayer of their answer.
The company, to avoid a money judgment, asked that the
certificates of the twenty-seven shares, if not intervener's,
be surrendered, and that it be directed to issue others in
their stead to the plaintiff. The relief thus sought was
affirmative, and possibly more appropriate to a counterclaim

or cross-petition. But it was within the allegations of the answer, and, if these were in the nature of a counterclaim, the fact that the pleading was designated an " answer " constituted no objection to granting appropriate remedy. *Starker v. McCosh Iron & Steel Co.,* 94 Iowa, 330; section 3566, Code.

The only error was in including the defendant Crawford in the order to surrender the stock. He was not shown to have been interested therein, save as the husband of intervener. But this particular defect is not objected to, and the decree as entered will be *affirmed.*